FILED
CLERK, U.S. DISTRICT COURT

9/25/20

CENTRAL DISTRICT OF CALIFORNIA
BY: CS _____ DEPUTY

Zepuor Parsanian
Pro - Se , Plaintiff
10526 Tinker Ave.
Tujunga, CA. 91042
Phone : 818 427-6356

## UNITED STAETS DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CV20-8937-VAP(MRWx)

Zepuor Parsanian
    Plaintiff

    v

United States Postmaster General
Louis DeJoy, et. all

CASE No.:


Complaint


Title VII of Civil Right Act
National Origin , Hostile Work Environment
Disparate Treatment ,
Retaliation


Complaint Filed :


Discovery Cut off :by Code

Motion Cut Off: by code


Trial Date: None Set


Request for Jury Trial

## INTRODUCTION

1.      This is an action for relief from violations by Defendant Postmaster General Louis DeJoy("Defendant Louis Dejoy) ), and Does 1-50 (collectively, "Defendants"), of the rights of Plaintiff - Zepuor Parsanian  ("Plaintiff ) to be free from unlawful employment discrimination on the basis of her National Origin Iranian - Armenian ) and Retaliation .

2.      Defendant, as Plaintiff's employer, subjected Plaintiff to the unlawful employment practice that had negative effects on plaintiff's terms and condition  of employment by refusing and denying available overtime work hours to plaintiff based on her skills and bid position .

3-      Defendant subject Plaintiff in reprisal adverse action of denial of available overtime work hours based on plaintiff's skills, seniority and bid position duties and responsibilities.

4-      Defendants' discriminatory action    against Plaintiff    for participating in protected activities complaints raising voice of opposition to violation of Contractual and National Agreement in distributing available overtime work hours on a regular basis, plaintiff has to file complaint and grievances not only for disparate treatment on receiving overtime work hours based   on her Nationality , also based on constant violating of contractual agreement under Article 8 of National Agreement between Defendant and Exclusive Union.

5-      Plaintiff witnessed Defendant's employees of all ranks, including Manager Human Resource , Postmasters and Facility managers openly engage in and/or openly allow the disparate treatment and violating of Union Contractual Bargaining Agreement .  The Retaliation and disparate treatment continued even after Plaintiff  expressed her opposition to them.

6-      The consequent hostile work environment, discriminatory demotion, and retaliation at the hands of Defendants never been stoped . As matter of Fact worsen every time Plaintiff assist and represent other employees who joint as member to National Alliance of Postal and Federal Employees ( NAPFE ) union which plaintiff was holding President position of that Labor Union .

## JURISDICTION AND VENUE

7-      This case arises under the laws of the United States and presents a federal question within this Court's jurisdiction under 28 U.S. C. 1331 and 42 U.S.C. 2000e which prohibit discrimination in Federal Employment on the basis of National Origin  and Retaliation for participate and engaging in protected activities.

8-      Venue lies in the Central District of California, the judicial District in which the claim arose pursuant to 28 U.S.C. 1391 ( B )

## PARTIES

9-      Plaintiff ,Zepuor Parsanian is an employee of Untied States Postal Service for 27 years and  she resides in Los Angeles , County , California.

2

10-    Defendant United States Postmaster General ( hereafter " USPS " ) is an Agency or Department of the Untied States, who operates an office in Los Angeles County .

11-    Defendant United Staes Postmaster General Louis DeJoy is the head of the United Staes Postal Service.

12-    Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES , inclusive , and therefore sues these Defendants by such fictitious names and capacities. Plaintiff is informed and believes and thereon alleges, that each fictitiously named Defendant is responsible in some manner for the events herein alleged and that the injuries to Plaintiff herein alleged were proximately caused by the conduct of such Defendants.

13-    Plaintiff alleges that each fictitiously named Defendant,  acted or failed to act in such a manner that each has contributed in proximately causing the damages to Plaintiff as herein alleged. Plaintiff will seek of this Court leave to amend this Complaint to set forth their true names and capacities when ascertained.

14-    Plaintiff is informed and believes and thereon allege that at all relevant times herein Defendants and each of them , and DOES was the agent , alter - ego ,joint employer, employee of , and /or joint venture with , or working in concert with , his/her co - defendants and was acting within the course and scope of such agency , employment and /or joint venture or concerted activity . To the extent that said conduct was perpetrated by certain Defendants, the remaining Defendants and DOES confirmed, adopted, approved , and /or ratified the same.

15-    Whenever and wherever reference is made in this complaint to any conduct by Defendants, or DOES , such allegations and references shall also be deemed to mean the conduct of each of the Defendants, acting individually , jointly and severally .

16-    Whenever and wherever reference is made to individuals or DOES who are not named as defendants, in this complaint , but were employees/ agents of Defendant Companies, such individuals at all relevant times acted on behalf of Defendant companies,  or respective DOES named in this paragraph within the scope of their respective employments.

17-    This court has jurisdiction under 28 U.S.C 1331 and 42 U.S.C. 2000e of Title VII of the 1964 Civil Rights Act which prohibited discrimination in Federal employment on basis  of National Origin and Retaliation Disparate Treatment.

18-    Venue is proper pursuant to 28 U.S. C 1391 ( B ) Title VII of Civil Rights Act and 42 U. S. C. 1981 and Defendants are subject to the personal jurisdiction , this Court because Defendants maintain facilities and business operations in this District, and all or most of the events giving rise to this action occurred in this District.

19-    Plaintiff's name is Zepuor Parsanian resides at Los Angeles County , California. Zepuor Parsanian is  employed by the United States Postal Service at Verdugo Viejo Postal Facility in Glendale , California.

20-    Plaintiff , Zepuor Parsanian previously on year 2013 filed civil action CV-13-00146 ABC(RZx) against Defendant and DOES.

21-    Defendant's Responsible Management officials who   discrimination and retaliate   are Jorge
Nougus, Gloria Chapman , Denise Moreno , Dana Kemp , Presiela Jang  at Glendale  Postal facility in
California.

NATURE OF THIS ACTION

22-.    Plaintiff   brought this action pursuant to Title VII of the Civil Rights Act   42 U.S.C. §
2000e et seq., as amended, ("Title VII"), 42 U.S.C. § 1981 and   Plaintiff filed a Discriminatory
and Retaliatory complaint with Equal Employment Opportunity on July 30 , 2016 and
Discriminatory retaliatory complaint on December 12 , 2017    Plaintiff brings this action since
180 days passed  from the  date of filling appeal and  Equal Employment Opportunity
Commission has not issued a decision .

23-    In Addition , On April 2018 , Plaintiff filed another discriminatory and retaliatory
complaint against the Defendant with Equal Employment Opportunity Commission , which
Plaintiff on July 30 , 2020 received right to sue letter . Attached hereto Exhibit A

24-    Plaintiff seeks  relief, compensatory damages, punitive damages, unpaid overtime and
double overtime hours , and her reasonable attorneys' fees and litigation expenses as
remedies for Defendants' violations of her Federal  law rights.

25-    Plaintiff  Zepuor Parsanian  is an Armenian - Iranian descent female . She worked ( still
working ) as Lead Customer Clerk for Defendant's since January 1994 till September 24 , 2016
while Defendant falsely accused her and Terminate her employment . Plaintiff on June 2017
was reinstated back to employment , however plaintiff did mot made whole of all her benefits
including lost of overtime pay that all the similar employees were already received overtime
hours.

26-    Plaintiff after reinstatement back to work , still was pursuing  its discriminatory and
retaliatory complaint against Defendant.

27 -    Plaintiff is informed and believes, and thereon alleges, that at all times relevant herein
each of the Defendant Does 1-50 were responsible in some manner for the occurrences and
injuries alleged in this complaint. Their names and capacities are currently unknown to Plaintiff,
and  will amend this Complaint to show such true names and capacities when the same have
been ascertained.

STATEMENTS OF FACTS

28-    At all relevant times herein, Plaintiff Pro Per,  was employed by the United Staes Postal Service
in Los Angeles County , California .On or About year 2013 ,  Plaintiff held Lead Customer Clerk position
within Defendant's Verdugo Viejo Postal facility  also known as Level 7 "Lead Clerk " .

29-    Plaintiff's  job responsibilities  included performing variety of clerk duties required for customer
service using automated mail  processing equipment or manual methods of sortation and distribution as
well as change of address entry /validation and processing undeliverable as address forwardable and
return to sender mail . May work with or without direct supervision or as a working leader to one or more
customer service employees resolving problems that may occur during operations and determining
when a supervisor should be involve. Ability to provide oversight,  direction and support of co-workers in

4

the absence of a supervisor. Ability to communicate orally refers to expressing spoken ideas or facts clearly and logically when answering questions, giving instructions , and providing information .

30- Plaintiff Duties also included to identify and analyze problems by gathering information form both oral and written sources and develop an appropriate course of action to resolve the situation. Ability to follow instructions refers to comprehending and executing either spoken or written instructions or directions sufficient to perform work assignment. Follow procedural directions or instructions either with or without direct supervision. Ability to coordinate, open and close postal unit. This includes planning and organizing the work of a small group of employees to achieve unit goals. Ability to safely perform the duties common to the position. Plaintiff as Lead Customer Service Clerk must work her assigned tour and days off work often within a customer service environment . Lead Customer service clerks must follow postal service policies and procedures for personal conduct at work , including adhering to rules and regulations. Lead Customer Service Clerks at any time may be assigned to provide service to the public. Attached hereto Exhibit B

31- . Throughout her employment, Plaintiff observed Defendant's management officials such as supervisor Dana Kemp and other supervisors providing non monetary postal transaction service to public customers at higher level pay monetary compensating including higher level pay overtime compensation .

32- Defendant's enter to collective Bargaining Agreement ( CBA ) or National Agreement with American Postal Workers Union ( APWU ) . The CBA Article 1.6 and Article 8 pertain to Overtime .

33- Defendant has policy of higher pay rate to non bargaining employees such as Defendant's supervisor and managerial within 8 hours per shift work hours and higher overtime pay for any hours worked beyond 8 hours shift.

34- Defendant , supervisor were receiving higher level pay rate and higher overtime pay rate for replacing plaintiff's duties while performing non monetary customer service .

35- On a regular basis, Plaintiff overheard and saw Defendant's management official telling plaintiff who was Iranian -Armenian descent that there is no available overtime work hours, while other Nationality comparison clerks were never been denied overtime hours and never been told to go home even their 8 hours shift has completed.

36- On several occasions, Plaintiff observed Defendant's different Nationality employees upon themselves working overtime hours sometimes double overtime pay hours beyond 10 hours of shift or working on their Non schedule days off without any disciplinary action by Defendant.

37- Unlike comparison's employees, Plaintiff on May 2016 , June 2, 2016 received disciplinary action by Defendant's officials for working overtime .

38- Shortly after filling a Discriminatory complaint on July 2016 Defendant in retaliatory motive toward plaintiff ,on August 30,2016 falsely accused plaintiff of using verbal threat toward management and placed plaintiff on Indefinite Suspension without pay .

39- Defendant , 10 months later after reversing plaintiff's termination and reinstate back to work on June 2017 , Defendant starts scrutinized plaintiff's work in order to find some reason to take an adverse action.

40-    Defendant on June 21,2017 intimidate and falsely accused plaintiff for misconduct . When Plaintiff request Union representative as her Weingarten rights , she was denied union representation  by Defendant .

41-  Plaintiff also saw and  has custody of different Nationality clerks overtime working hours database that further  demonstrated  open and  widespread of Defendant's violation of distribution of available overtime work hours during daily shift schedule  or weekly schedule within employees skills, position and seniority . For example, on a regular basis, Plaintiff became aware of  Defendant's  supervisor  instructed   plaintiff no available overtime work hours  while other Nationality employees were not subject to the same treatment by Defendant.

42—  On an ongoing basis, Plaintiff  observed weekly schedule that  comparison  employees in different Nationality was working  on their non schedule days off for 8 hours of overtime pay . While plaintiff was the only employee   strictly singled out by Defendant to work on her non schedule day off in order to receive 8 hours of  overtime pay.

43-    Plaintiff expressed her opposition to disparity of daily and weekly distribution of overtime hours based on her Nationality that was also  in violation Collective Agreement  to various Defendant's      supervisors throughout her employment, including to her direct supervisor, Dana Kemp . Despite Plaintiff repeated expressions of disparity treatment toward her  and her opposition,  no action was taken by Defendant to remedy the matter or explain of disparity treatment . To the contrary, Plaintiff was intimidated with discipline, denial of any necessary training and less desirable work hours because of her initiating EEO discriminatory complaint.

44 -    Prior to Year 2016 , in past Plaintiff has filed numerous  EEO discriminatory complaint against the same Defendant as  she was denied a bid position based disability and disparate treatment. Equal Employment Opportunity Commission (. Case 480200700586X ) on June 2009 found Defendant   discriminated against complainant , denied her  bid position on the basis of disability both on disparate treatment and failure to accommodate .

45-    Prior to year 2016 Plaintiff as as labor Union ( NAPFE  union ) president  were  assisting and  representing an African American male    postal employee in filling a discriminatory protected activity complainant against Defendant  in Glendale Post Office. ( Grayson v. U.S Postal service 480 2007 00195X  , Office of Federal Operation docket number ( 0720080044 ) . On April 11,2008 Defendant    Glendale Post office found to be  in violation of Rehabilitation Act.

46-    Prior to year 2016 , Plaintiff    as Labor Union  ( NAPFE union ) president  , assist and represent an Hispanic Female postal employee on her protected activity complaint ( 480 2008 00121X )  against Defendant postal facility Verdugo Viejo Station management . On December 21,2009 EEOC found Defendant   discriminated against Hispanic female employee based on her record of being disabled and issued corrective Action to post Notice at the Glendale Post Office ,including all sub-stations of finding discrimination .

47-    Prior to year 2016 , Plaintiff  as labor Union (NAPFE union )  president  , since year 2014 assist and represent African American male postal employee on his protected activity complaint ( 480 201700762X )   against Defendant . On September 29 , 2017 EEOC found Defendant  in violation of Title VII  on disparate treatment based on Race.

48-    . Plaintiff  was  informed and believes that in or around July  2016 , Defendant just for the sole of denying available overtime hours  to plaintiff , assigned two Hispanic employees from other surrounding Glendale Postal Facilities to Verdugo  Viejo postal facility while those two Hispanic employees already had  duties at other respective facilities . Plaintiff in good faith believed and complained to the   Postmaster of Glendale stating it was discriminatory and retaliation to assign two hispanic employees just to ban available overtime work hours to her since the duties of two hispanic employees was within plaintiff's lead customer clerk bid position responsibilities and duties. More over the two Hispanic employees did not interfere or effect the other Nationality employees overtime hours . It was negative effect on Plaintiff's opportunity to overtime hours pay.

49-    At the time plaintiff  filed her discriminatory complaint on July 2016  , she  believed in good faith that she was retaliated when Defendant's  management officials scheduled  Different Nationality junior clerks and supervisors working on non financial transaction at window operation   for the sole purpose of denying her available overtime work hours within her Lead Customer bid position .

50-    Although Defendant provided sworn affidavit in both of plaintiff's EEO  complaint that overtime work hours is not guarantee , and Defendant  has right to maintain the efficiency of the operations entrusted to it and to determine the methods ,   such operations are to be conducted,
Defendant's officials   did not explain how they chose the method  and how they chose Philippine Descent clerk  Rossana Roxas starting shift 2 hours earlier overtime pay rate instead of Plaintiff when there was available overtime work and opportunity .

51-    Defendant   provide sworn affidavit in both plaintiff's EEO complaint arguing that overtime hours is not guarantee and Defendant's management has right to maintain the efficiency of the operations entrusted to it and to determine the methods,  such operations are to be conducted. Defendant   did not explain how they chose the method of authorizing comparison Asian clerk  Shaung Prom Sales Service Lead Clerk report  to work earlier than her usual bid starting time , to receive   pre tour overtime on daily basis instead of plaintiff who was denied the same treatment.

52-    Defendant's officials provide affidavit in both plaintiff complaint that plaintiff can only perform non monetary customer    transaction   on overtime hours , but did not explain legitimate non discriminatory ,non    retaliatory reason   how Supervisor Dana Kemp was replacing plaintiff's available overtime work hours   on non monetary customer transaction while supervisor receiving higher level pay rate for the same task  instead of plaintiff.

53-    Defendant Since May 2016   till June 2017 treated Philippine and Asian Comparison clerks     Shaung Prom and Rossana Roxas  with routine guaranteed overtime work hours . Plaintiff was retaliated and denied  available overtime work hours during the same time .

54-    On or around November 2016   , Defendant  publicly removed  Plaintiff from her bid position and replace plaintiff  with Hispanic new hired female employee.

55-    Although defendant's management officials stating in the EEO affidavit , that Plaintiff will not work on overtime pay on her Non Schedule days off,  while other employees are available to work, However  on  September 3 , 2017 ,    October 7 , 2017 , November 19,2017 and

November 22, 2017 and December 30,2017 , February 12 , 2018 different Nationality such as Philippine , Asian, Hispanic  and Caucasian comparison  employees  were each work 8 hours of overtime on their non schedule days offs ,while   employee  such as Regina Pena was available to work .  Defendant did not explain reason that On September 2 , 2017 Asian clerk Ms. Shaung Prom and Caucasian male Mr. Mark Garrett ,each worked 8 hours of overtime  on their non schedule day , each for 8 while junior clerk Regina Pena was  available to work  .

56-     Defendant in discriminatory motive toward plaintiff ,although in affidavit stating that overtime is not guarantee , however,  Asian Ms. Shuang Prom every day guaranteed  received pre tour overtime  hours .

57-     Defendant in favorable treatment toward Asian comparison employee   Shaung Prom , allowed Asian comparison employee to   work 2 hours overtime  on 8/7/17 -8/14/17 -9/11/17 -9/14/17 -9/19/17 - 9/21/17 - 9/25/17 -10/2/17 - 10/27/17 - 11/14/17 - 12/11/17 while  other clerks were available to work .Defendant in retaliatory motive toward plaintiff ,  had different set of rules and policy toward plaintiff compare to all other Nationality comparison employees on overtime work hours and pay .

58 -     Defendant in favorable treatment toward   Asian clerk Ms. Shaung Prom  between 12/11/2017 to 12 /21/17  by receiving   extra pay rate and extra overtime pay rate   hours beyond her usual pay rate .

59 -     Defendant removed plaintiff from her Remote Forward System  (RFS ) duties as part of her Lead Customer Clerk position , just  for sole purpose of providing  Asian Clerk Ms. Shuang Prom  more  overtime pay work  on :  10/6/17 - 10/27/17 - 11/7/17 - 11/20/17 11/24/17 - 12/4/17 - 12/11/17 1/19/18 - 1/25/17 - 1/29/17- 3/5/18 - 3/21/18 - 5/9/18 5/17/18 - 5/29/18 - 5/31/18 and 6/7/18 .

60 -     Defendant treated Asian employee   Ms. Shuang Prom  favorably on  overtime work hours and pay  that was not part of Ms. Prom's duties on  11/20/17 - 11/24/17 - 1/29/17 - 5/31/18 and  6/7/18.

61-     Defendant unlike the   treatment committed toward plaintiff, it treated Philippine Ms. Rossana Roxas and Asian employee  Ms. Shaung Prom  for any  opportunity to work overtime while Philippine Junior clerk Regina Pena was available to work straight time .

62-     Plaintiff   on 9/16/17 - 9/30/17 - 10/4/17 - 10/21/17 - 10/28/17 - 12/2//17 - 12/9/17 -12/15/17 - 12/23/17 - 12/29/17 - 1/5/18 - 1/13/18 - 2/24/18  and 3/1/18   Denied opportunity to work overtime hours because Junior Philippine clerk  Regina Pena was scheduled to work overtime hours  than her.

63 -     Defendant for sole purpose of retaliation toward plaintiff  denied available overtime work hours but Defendant at the same time authorize Philippine Clerk Ms. Rossana Roxas on double overtime hours on 6/2/17 - for the week of 6/3/17 to 6/9/17 - 6/11/17 - 6/20/17 - 6/22/17 -

6/30/17 - 8/25/17 - 8/29/17-9/5/17 -10/6/17 - 10/10/17 - 10/24/17 - 10/27/17 - 11/4/17 - 11/13/17 - 11/14/17 - 12/11/17 - 12/4/17 - 12/5/17 - 12/8/17 and 12/9/17 .

64-    While Defendant discriminate and retaliated against Plaintiff for available overtime work hours , Defendant on 9/14//2017 had two comparison employees from other Postal facility Caucasian female Brittney Morris and African American Jeffery Allen solely for taking available overtime work hours from plaintiff .

65-    Plaintiff contends that under Defendant  own regulations and Collective Bargaining Agreement , Defendant  have to consider Plaintiff's  Lead Customer Service position and description of the duties of position, seniority  prior replacing plaintiff  with junior clerk Philippine Ms. Rossana Roxas . Because Ms. Rossana Roxas has less seniority than Plaintiff and Ms. Roxas bid position does not include to processing  Undeliverable mail.

66-    Defendant On June 8 , 2017  reverse complainant's termination on August 30,2016 Defendant in discriminatory and retaliatory motive refused  to make whole and still deny  to compensate  Plaintiff  with  lost of overtime work hours during her termination period while Different Nationality clerks received overtime pay work hours.

67-    Thereafter, Plaintiff began to openly share feeling of reprisal by Defendant with other Defendant's supervisors.

68 -    Defendant since August 2016 till June 2017 allowed and paid other Nationality clerk each  for up to 20 hours per week  overtime  hours that was within Plaintiff's duties and responsibilities, but plaintiff did not compensated for lost overtime hours.

69-    Defendant on or about July 2017 informed Plaintiff , and plaintiff  believes that all employees except Plaintiff can work overtime up to 20 hours per week , because Plaintiff was Union President and were assisting other employees on any complainant against Defendant.

70-    Defendant in retaliatory motive toward plaintiff on July 29,2017 again falsely accused plaintiff without any proof placed plaintiff in indefinite suspensions without pay .

71-    Defendant shortly after reverse plaintiff's indefinite suspension on August 7,2017.

72-    Plaintiff on or about September 2017 filed another discriminatory and retaliatory complaint with Equal Employment Opportunity Commission against Defendant .

73-    Defendant due to Plaintiff protected activities and assisting employees in protected activities  continuously since January  2018 denied and bypassed available overtime work hours to plaintiff.

74-    Plaintiff as senior employee on February 19,2018 was given less desirable work schedule by Defendant official Jorge Nogues, solely in purpose of retaliating against plaintiff and for purpose of  favorable work schedule  to Philippine employee Daisy Valencia.

75-    Defendant reason was pretextual because Defendant official Jorge Nogus    had not honestly believed that Philippine employee Daisy Valencia  did not know the procedure of how to dispatch or how to lock the building on February 19 , 2018 .

76-    Plaintiff on March 9, 2018 requested on annual leave  for 3/31/2018 from her supervisor Dana Kemp .  Defendant denied plaintiff's request and later in pretext,  Defendant in affidavit stating that plaintiff request annual leave at the same day which is lie.

77-    Defendant treated comparison Philippine employee Josephine Valdez by granting annual leave  on February 24, 2018 at the same day of Ms. Valdez 's  verbally request annual leave. Defendant   treated plaintiff in disparity and retaliatory manner regardless of written or verbal request of time off.

78-    Defendant employees such  Philippine employee Rossana Roxas and Asian Employee Cam Ong Cook on 3/10/18 thru 3/16/18 every day worked 2 hours of overtime on available work   beyond 8 hours shift while Plaintiff was  available and denied for the same available overtime work hours .

79-    On 3/12/2018 Defendant supervisor Dana Kemp  worked overrate hours on higher pay level at non monetary customer transaction while Plaintiff was denied request to work overtime at the same day.

80-    On 3/12/2018 Philippine non career employee Ms. Regina Pena  worked overtime hours while Plaintiff denied to work available overtime work hours.

 81-    On 3/13/18 plaintiff asked Defendant's   official Mr. Jorge Nogues   denied plaintiff request to work on available work on overtime hours . Defendant official at the same day paid Ms. Britney Morris non career employee 12 hours of overtime pay .

82-    Plaintiff on 3/14/18  request to work overtime hours and she  denied available overtime work hours while all different Nationality employees at the same day worked overtime hours without any request.

83-    Defendant on  3/15/2018  denied plaintiff available overtime work hours while at the same day Philippine employee Ms.  Rossana Roxas worked 2 hours overtime on RFS mail  to replace plaintiff bid position duties on available work hours.

84-    On 3/18/2018 again plaintiff  was removed from prior authorization of working overtime as it was mistake by Defendant supervisor to allow her to work overtime.

85-    On 3/19/18 Plaintiff was denied to work on non monetary customer transaction which Defendant management official Dana Kemp received higher level overtime pay to work on non monetary  customer service duties that was within plaintiff bid position duties .

86-    On 3/20/2018 plaintiff was removed from prior authorization of working overtime as it was a mistake by defendant official  to allow her to work overtime work hours.

87-    Defendant officials on 3/28/2018 denied plaintiff for  available overtime work hours.

88-     Defendant On 4/24/2018 denied plaintiff available overtime work hours .

89-     Defendant on 4/25/2018 denied available overtime work hours but at the same day different Nationality employees were working overtime hours .

90-     Defendant On 5/2/2018 denied available overtime work hours to plaintiff , however at the same day Philippine employee Ms. Daisy Valencia report to work an hour early as pre shift overtime hours and  pay.

91-     Defendant on 5/3/2018  denied available overtime work hours to plaintiff, however at the same day Philippine employee Ms. Rossana Roxas treated favorable by  working  overtime pay hours for the same duties that was available to plaintiff but she was denied.  At the same day Defendant Official Dana Kemp was working on higher level overtime pay rate   on non monetary customer transaction while plaintiff was denied the opportunity work overtime hours.

92-     Defendant on  5/4/2018 denied plaintiff available overtime work hours however at the same day Philippine employees Ms. Roxas and Asian Employee Ms. Cam Ong Cook were both working overtime hours for the duties that was available to plaintiff. At the same day Defendant Official Dana Kemp was working on higher level overtime pay rate  on non monetary customer transaction while plaintiff was denied the opportunity work overtime hours.

93-     Defendant On 5/11/2018 denied available overtime work hours while at the same day Philippine employee Ms.  Rossana Roxas worked overtime hours on the duties that was available to plaintiff within plaintiffs bid position duties.

94-     Defendant On 5/12/2018 again denied available overtime work hours to plaintiff , however Philippine employee Ms. Rossana Roxas worked overtime hours on the same duties and assignment that was available to plaintiff.

95-     Defendant on 5/14/2018 denied plaintiff available overtime work hours, but Philippine employee Ms. Rossana Roxas and Asian employee Cam Ong Cook both  worked overtime on the duties that was available to plaintiff  but she was denied.

96-     Defendant again On 5/30/2018 denied plaintiff available overtime work hours while defendant supervisor official Dana Kemp was working in higher level overtime pay on non monetary customer transactions that was available to plaintiff but was denied.

97-     Defendant official Jorge Nogues openly admitted in EEO affidavit that any available overtime work hours within plaintiff's duties and responsibilities   were given to different Nationality employees to be worked at later shift, but at the same time Defendant official Jorge Nogues admit the same treatment did not applied  to Different  Nationality employees .

98-     Defendant was directly in violation of CBA in distributing overtime work hours and Defendant reliance that available overtime was after 1:00 pm or  5:00pm is pretextual.

99-     Defendant in retaliatory motive toward plaintiff, denied available overtime work hours by having Defendant supervisor official to perform duties that was within plaintiff's bid position , solely in reprisal motive that had negative effect only and only toward plaintiff's terms and condition of employment .

100-    Defendant committed  harassment with discriminatory intimidation that was severe and
pervasive to change plaintiff's conditions of employment based on denial of overtime hours.


## FIRST CLAIM FOR RELIEF

### [Hostile Work Environment Based on National Origin in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)]


101-    Plaintiff  incorporates by reference the allegations contained in Paragraphs 1 through
100 of  above, as if fully set forth herein.

102-    Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an
employer : "(1) to fail or refuse to hire or to discharge any individual, or otherwise to
discriminate against any individual with respect to his compensation, terms, conditions, or
privileges of employment, because of such individual's race, color, religion, sex, or national
origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any
way which would deprive or tend to deprive any individual of employment opportunities or
otherwise adversely affect his or her  status as an employee, because of such individual's race,
color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).


103-    Defendant's harassment  conduct was severe and pervasive that on a regular  basis,
Plaintiff witnessed how Defendant's officials openly singled her out  , that Defendant would not
change  its  treatment  even  plaintiff  continuously  reported  and  filed  three  discriminatory
complaints.


104-    The Defendants' actions in relation to  different set of rules and policy for plaintiff ,also
in violation of its National Agreement  thereto created a hostile work environment for Plaintiff
because of her national origin.

105-    Defendants did not exercise reasonable care to prevent the creation of a hostile work
environment charged with national origin discrimination, and did not exercise reasonable care
to treat plaintiff the same way as other comparison employees even after Plaintiff repeated
openly opposition to Defendant's action.

106-    As a direct, legal and proximate result of this discrimination, Plaintiff  has sustained
economic and emotional injuries, resulting in damages in an amount to be proven at trial.

107-    Defendants' unlawful actions were intentional, willful, malicious, and/or done with
reckless disregard to Plaintiff right to be free from discrimination based on national origin and
retaliation for participating on protected activities.


## SECOND CLAIM FOR RELIEF
### [National Origin Discrimination (Disparate Treatment) in Violation of Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000e-2(a)]

108-    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 – 107, above.

109-    Defendants subjected Plaintiff to disparate treatment regard to term and condition of her employment, setting different set of policy and rules toward plaintiff's that deprive plaintiff to equal overtime work hours and equal scheduling and equal benefits compare to all different Nationality comparison employees based on plaintiff's National Origin.

110-    Defendants discriminated against Plaintiff by denying available overtime work hours on the basis of her National Origin, as Armenian - Iranian.

111-    Plaintiff's National Origin was the determining factor and/or a motivating factor in Defendants' adverse employment action of denying her overtime work hours and termination of employment since none of different Nationality employees ever treated the same way.

112-    As a direct, legal and proximate result of the discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

113-    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on national origin.

THIRD CLAIM FOR RELIEF
Retaliation in Violation of 42 U.S.C. § 1981]

114-    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 – 113, above.

115-    Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

116-    Plaintiff engaged in protected activity by making numerous EEO complaints to Defendants' agents about Defendants' employment practice of signaling plaintiff and deny of available overtime work hours within her bid positions ,skills and seniority as a term and condition of employment based on her Armenian Nationality compare to all similar situated employees under the same Defendant's Postal facility and under the same Defendant's management officials.

117-    Plaintiff engaged in protected activities by not only pursuing her own Discriminatory complaint against Defendant , also by assisting and representing postal employees in any discriminatory and retaliatory complaint that was obvious to Defendant.

118-   Plaintiff reasonably believed Defendant's  treatment as to  term and condition of her employment was unlawful.

119-    As a result of Plaintiff complaints, Defendants, their agents and/or employees took materially adverse actions against Plaintiff including, but not limited, to falsely accused her of verbal threat , placing plaintiff in indefinite without pay suspension , terminate her employment and on or around November 2016 , Defendant publicly removed  Plaintiff from her bid position and replace plaintiff  with Hispanic new hired female employee.

120-    Defendants', their agents' and/or employees' retaliatory actions would deter a reasonable employee from engaging in protected activity under Title VII.

121-   Defendant's , their agents unlawful retaliatory action of supervisor officials to deny Plaintiff of available overtime work hours  and pay and then the same supervisor official himself to perform duties of plaintiff with higher level overtime pay  were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff right to be free from retaliation.

122-   Plaintiff  in good faith believes that  similarly situated, although less qualified, Non Armenian  employees within Defendant regardless of skills , bid position or assignment  were received up to 20 hours of daily and weekly of overtime work .

123-    Defendant could not satisfy its burden of identifying a legitimate nondiscriminatory reason for termination plaintiff - that on August 30,2016 plaintiff  made a verbal threat to an employee . However, Plaintiff maintains  that a reasonable fact finder could not conclude that Defendant was not truly motivated by the belief that she verbally threaten an employee.

124-   Plaintiff made numerous complaints to Defendants' agents  about the employment practice of denial of available   overtime pay based on plaintiff's bid position duties and responsibilities  as a term and condition of her employment.

125-   Defendant enforced a  Policy of denying of overtime work hours just only to plaintiff based on her assisting and engaging in protected activities known to Defendant.

126-    As a result of Plaintiff's  engaging in protected activities and assisting other employees in their protected activity complaint, Defendants' agents   took materially adverse actions against Plaintiff including, but not limited to, assigning other employees from surrounding postal facilities  to take available overtime work hours that only effected plaintiff's opportunity to  overtime work hours, supervisor officials to be perform ,  be paid of higher lever overtime pay for overtime work hours that was available to plaintiff , in pretext   terminate plaintiff'd employment , after reinstatement back to employment continue to  deny overtime work hours to plaintiff.

127-    Defendants' retaliatory actions would deter a reasonable employee from engaging in protected activity under § 1981.

128-    As a direct, legal and proximate result of the discrimination, Plaintiff  has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

129-    Defendant's Management level employees knew, or should have known, of the violation of Collective Bargaining Agreement pertain to   distributing overtime work hours , pertain to assigning other employees from surrounding offices to negative effect of plaintiff's to work available work hours on overtime pay and disparity of treatment compare to all other similar

employees under the same postal facility and under the same management    chain of command.

130-   As a direct, legal and proximate result of this retaliation , Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

131-   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff right to be free from retaliation .

## FOURTH CLAIN FOR RELIEF
## WRONGFUL DISCHARGE BASED ON
## NATIONAL ORIGIN AND RETALIATION

132-   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 – 131, above.

133-   Plaintiff   National Origin with different rule and policies , along with reprisal was the determining factor and/or a motivating factor in Defendant's adverse employment action of terminating Plaintiff's employment from August 20,2016 to June 8 , 2017 in false allegation of engaging in verbal threat.

134-   As a direct, legal and proximate result of the Discrimination and retaliation, Plaintiff has sustained economic   injuries of not made whole in all employment   aspects ,resulting in damages in an amount to be proven at trial.

135-   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff right to be free from retaliation and discrimination .

## FIFTH CLAIM FOR RELIEF
## [Negligent Supervision]

136-   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 135 above.

137-   Plaintiff   is informed and believes and thereon alleges that Defendant knew or reasonably should have known of the   their failure adequately to supervise its agents and DOES .

138-   Plaintiff alleging and argues that further factual development would demonstrate that Defendant (or any decision-maker) understood and interpreted her August 30,2016 Emergency Suspension without pay followed by September 2016 Termination , was intend to punish plaintiff in sever and punitive manner, in conclusion of plaintiff  engaged in protected Activities.

139-    Plaintiff alleging and argues that Defendant was aware of plaintiff's grievances pertain to termination of her employment constitutes protected activity.

140-    Plaintiff respectfully requests this court for leave to amend pleadings pursuant to Rule 15 shall be liberally and freely given when justice so requires and does not prejudice any other party."

## DECLARATORY RELIEF ALLEGATIONS

141-    A present and actual controversy exists between Plaintiff and Defendants concerning their rights and respective duties. Plaintiff contends that Defendants violated her rights under Title VII, 42 U.S.C. § 1981,   Plaintiff  is informed and believes and thereon alleges that the Defendants deny these allegations. Declaratory relief is therefore necessary and appropriate.

142-    Plaintiff seeks a judicial declaration of the respective rights and duties of the parties.

## INJUNCTIVE RELIEF ALLEGATIONS

143-    No plain, adequate, or complete remedy at law is available to Plaintiff  to redress the wrongs alleged herein.

144-    If this Court does not grant the injunctive relief sought herein, Plaintiff will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.    For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

2.    For lost overtime work hours , penalties and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

3.    For compensatory damages for Plaintiff emotional pain and suffering during 10 months indefinite without pay suspension , in an amount to be proven at trial;

4.    For punitive damages in an amount to be determined at trial;

5.    For interest on lost overtime work pay , compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

6.    For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

7.    For such other and further relief as this Court deems just and proper.

Dated: September 24 ,2020

Respectfully submitted,
Zepuor Parsanian
Plaintiff Pro Per
10526 Tinkier Ave.
Tujunga, CA. 91042



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Zepour Parsanian, a/k/a
Martina S.,[1]
Complainant,

v.

Megan J. Brennan,
Postmaster General,
United States Postal Service
(Pacific Area),
Agency.

Appeal No. 2019002683

Agency No. 4F-913-0064-18

DECISION

On February 19, 2019, Complainant filed an appeal, pursuant to 29 C.F.R. § 1614.403(a), from the Agency's January 18, 2018 final decision concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq.

BACKGROUND

During the period at issue, Complainant worked as a Lead Customer Service Clerk at the Agency's Glendale Verdugo Viejo Post Office in Glendale, California.

On April 2, 2018, Complainant filed the instant formal complaint. Complainant claimed that the Agency discriminated against her on the bases of national origin (American) and in reprisal for prior EEO activity (Agency No. 4F-913-0013-18) when:

1. since January 2018 and ongoing, she was bypassed for available overtime;

2. on an unspecified date, she was given a less favorable work schedule than other employees; and

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

Exhibit A

2                                                                2019002683

3.  on or about April 20, 2018, she was treated disparately concerning the granting of annual leave.[2]

After the investigation of the formal complaint, Complainant was provided with a copy of the report of the investigation and with a notice of the right to request a hearing before an EEOC Administrative Judge or a final decision within thirty days of receipt of the correspondence. Complainant did not respond.

In its January 18, 2018 final decision, the Agency found no discrimination based on the evidence developed during the investigation.

The instant appeal followed.

ANALYSIS AND FINDINGS

A claim of disparate treatment is examined under the three-part analysis first enunciated in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). For complainant to prevail, she must first establish a prima facie of discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination, i.e., that a prohibited consideration was a factor in the adverse employment action. See McDonnell Douglas, 411 U.S. at 802; Furnco Construction Corp. v. Waters, 438 U.S. 567 (1978). The burden then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once the agency has met its burden, the complainant bears the ultimate responsibility to persuade the fact finder by a preponderance of the evidence that the agency acted on the basis of a prohibited reason. See St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

This established order of analysis in discrimination cases, in which the first step normally consists of determining the existence of a prima facie case, need not be followed in all cases. Where the agency has articulated a legitimate, nondiscriminatory reason for the personnel action at issue, the factual inquiry can proceed directly to the third step of the McDonnell Douglas analysis, the ultimate issue of whether complainant has shown by a preponderance of the evidence that the agency's actions were motivated by discrimination. See U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 713-714 (1983); Hernandez v. Department of Transportation, EEOC Request No. 05900159 (June 28, 1990); Peterson v. Department of Health and Human Services, EEOC Request No. 05900467 (June 8, 1990); Washington v. Department of the Navy, EEOC Petition No. 03900056 (May 31, 1990).

Regarding allegation 1, Complainant asserted that since January 2018 and ongoing, she was bypassed for available overtime.

---

[2] The record reflects that claim 3 was later amended to the instant formal complaint.

Exhibit A

3                                                                                              2019002683

The Manager, Customer Services (American) explained that Complainant was not bypassed for overtime but rather overtime but rather than overtime on the dates in question was assigned at the window at midday or later when she was off duty as her tour ends at 12:00 noon. He also stated that overtime "is not guaranteed. The need for overtime is not determined by the employee, it is determined by management after reviewing workload." For instance, the Manager stated that on February 19, 2018, it was a holiday and "unless it falls on your day off, you don't get paid OT, and you get paid for hours worked."

With respect to Complainant's allegation that other employees were treated more favorably than her regarding overtime, the Manager asserted that other employees were not treated favorably over Complainant. The "overtime was worked and available until 1:00 p.m. ([named employee]) and 1900 ([another named employee]). Complainant goes home at 12:00 pm."

Regarding allegation 2, Complainant alleged that on an unspecified date, she was given a less favorable work schedule than other employees.

The Manager explained that in regard to the holiday schedule on February 19, 2018, he made the decision to assign Complainant to the later schedule because she "knew the procedure of knowing how to dispatch our close out… and lock up the building. The other employee did no[t]."

Regarding allegation 3, Complainant alleged that on or about April 20, 2018, she was treated disparately concerning the granting of annual leave.

The Manager explained that Complainant requested annual leave on the same day which was denied. He maintained the reason for the rule was to give management advance notice and an opportunity to review the work schedule.

With regard to her three claims, beyond her bare assertions, Complainant failed to prove, by a preponderance of the evidence, that her national origin or prior EEO activity played any role in the events at issue.

<u>CONCLUSION</u>

We AFFIRM the Agency's finding no discrimination because the preponderance of the evidence of record does not establish that discrimination occurred.

Exhibit A

4                                                    2019002683

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0617)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

    1.    The appellate decision involved a clearly erroneous interpretation of material fact or law; or

    2.    The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. A party shall have **twenty (20) calendar days** of receipt of another party's timely request for reconsideration in which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission. Complainant's request may be submitted via regular mail to P.O. Box 77960, Washington, DC 20013, or by certified mail to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The agency's request must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

Exhibit A

5                                                      2019002683

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

July 30, 2020
Date

22                                          Exhibit A

## Qualification Standards
### *Position Description*

List of Positions    U.S.Postal Service

## LEAD CUSTOMER SERVICE CLERK
## OCCUPATION CODE: 2320-0008
## JOB LEVEL: P7-P7-07

BARGAINING UNIT QUALIFICATION STANDARD
(2320-0008) CUSTOMER SERVICE CLERK

DOCUMENT DATE:
 05/04/2012

FUNCTION:

Performs a variety of clerk duties required for customer service using automated mail processing equipment or manual methods of sortation and distribution as well as change of address entry / validation and processing undeliverable as address forwardable and return to sender mail. May work with or without direct supervision or as a working leader to one or more customer service employees resolving problems that may occur during operations and determining when a supervisor should be involved.

DESCRIPTION OF WORK:

See the Standard Position Description for the Occupation Code given above.

REQUIREMENTS:

This section is composed of Knowledge, Skills, and Abilities (KSAs) which are required to satisfactorily perform the tasks of the position. Applicants must demonstrate that they possess a sufficient level of each KSA, to include at least minimum competency for senior-qualified positions to enable them to perform these tasks satisfactorily. The KSAs are demonstrated by successful completion of tests and specified training, unless otherwise noted. Failure to demonstrate any KSA is disqualifying.

1. Ability to provide oversight, direction and support of co-workers in the absence of a supervisor.

23    Exhibit B

8/19/2015

Qualification Standards - BQnet

2.  Ability to communicate orally (refers to expressing spoken ideas or facts clearly and logically when answering questions, giving instructions, and providing information).

3.  Ability to perform basic mathematical computations (refers to performing basic calculations such as addition, subtraction, multiplication, and division with whole numbers).

4.  Ability to identify and analyze problems by gathering information from both oral and written sources and develop an appropriate course of action to resolve the situation.

5.  Ability to follow instructions refers to comprehending and executing either spoken or written instructions or directions sufficient to perform work assignments, follow procedural directions or instructions either with or without direct supervision.

6.  Ability to coordinate, open and close, and operate a postal unit. This includes planning and organizing the work of a small group of employees to achieve unit goals.

7.  Ability to safely perform the duties common to the position.


EXAMINATION REQUIREMENTS:


Applicants must successfully complete Postal Service Test 473, which includes the following measures of job-related knowledge, skills, and

abilities:


A.  Address Checking
B.  Forms Completion
C.  Coding & Memory
D.  Personal Characteristics and Experience Inventory


EXPERIENCE REQUIREMENTS:


Applicants must have a minimum of one year experience in a customer service position.


PHYSICAL REQUIREMENTS:


Applicant must be physically able to perform efficiently the duties of the position.


ADDITIONAL PROVISIONS:

24                    Exhibit B

Qualification Standards - BQnet

Lead Customer Service Clerks must work their assigned tour and days of work often within a customer service environment. Lead Customer Service Clerks must follow Postal Service policies and procedures for personal conduct at work, including adhering to rules and regulations.

Lead Customer Service Clerks at any time may be assigned to provide service to the public. They must maintain a neat and professional appearance and demeanor in such interactions, including wearing a uniform when required.

**Occ Code: 2320-0008**

Back

25                    Exhibit B

Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® sh

United Sta
Postal Se

**PRIORITY**

U.S. POSTAGE PAID
PM
GLENDALE, CA
SEP 24, 20
AMOUNT
**$14.15**
R2304H108357-17

90012

1006

**PRESS FIR**

**FROM:**

ZEPUOR PARSAMIAN
10526 Tinker Ave.
Tujunga CA 91042

FILED
CLERK U.S. DISTRICT COURT

SEP 25 2020

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

**TO:**

United States District Court
Central District of California
Clerk of Court
255. E. Temple St.
Suite 15 -134
Los Angeles. CA 90012

**PRIORITY®**
**MAIL**

how2recycle.info

FSC

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE

**CERTIFIED MAIL**

7020 1290 0001 9008 8315

**for domestic**
**le up to $50 c**
**mestic and m**
**stoms declara**

or details regarding claims exclusions see the
e.usps.com for availability and limitations of coverage.

To schedule free Package Pickup,
scan the QR code.

**USPS.COM/PICKUP**

**ELOPE**

**URED**

EP14F May 2020
O: 12 1/2

9 1/2